GALARZA LAW OFFICE, P.C.
J. Ceasar Galarza (JG1557)
5020 Sunrise Highway, 2nd Floor
Massapequa Park, NY 11762
Tel:  516-797-1600
Fax: 516-7995-2619
jgalarza@aol.com
*Attorneys for PLAINTIFFs*

## UNITED STATE DISTRICT COURT FOR
## THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KECIA MONK as Mother and Natural Guardian of  JAHLIL Q., a Minor,   LARISSA ROYSTER as Legal Guardian of   TYQUAN H., a Minor, KECIA MONK, INDIVIDUALLY, and LARISSA ROYSTER INDIVIDUALLY, <br><br> PLAINTIFFS <br><br> -against- <br><br> THE CITY OF NEW YORK, NEW YORK CITY <br><br> Defendants, | **AMENDED Complaint** <br> **AND** <br> **JURY DEMAND** |

PLAINTIFFs KECIA MONK as Mother and Natural Guardian of JAHLIL Q., a

Minor, and KECIA MONK, INDIVIDUALLY, LARISSA ROYSTER as Legal Guardian

of TYQUAN H., a Minor, and LARISSA ROYSTER (collectively referred to herein as

"PLAINTIFFs"), by and through their attorneys at the law firm of Galarza Law Office,

P.C., states the following:

## JURISDICTION

1.   This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over claims

arising under 42 U.S.C. § 1983.

2. Supplemental jurisdiction over all PLAINTIFF's state-law claims exists pursuant to 28
U.S.C. § 1367(a).

3. The PLAINTIFFs have complied with the requirements of New York General Municipal
Law Section 50-i by making and serving a notice of claim on the City of New York   on
June 13, 2011, and on the Corporate Counsel of New York City on June 13, 2011.   Those
notices were served within the time required by New York General Municipal Law
Section 50-e, and more than thirty days have elapsed since the service of those notices.

4. At the request of the City of New York, on August 25, 2011, all PLAINTIFFs herein
submitted to a hearing pursuant to New York General Municipal Law Section 50-h.

<u>VENUE</u>

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York, the
judicial district in which the claims arose.

<u>JURY DEMAND</u>

6. Pursuant to the Seventh Amendment of the United States Constitution, all
PLAINTIFFs request a jury trial on all issues and claims set forth in this Complaint.

<u>PARTIES</u>

7.  Upon information and belief, and at all times hereinafter, the incidents herein referred to occurred in the City of New York, County of Queen, and State of New York.

8.  PLAINTIFFs KECIA MONK (hereinafter referred to "PLAINTIFF" or "Monk"), INFANT JAHLIL Q.   (hereinafter referred to as "Infant" or "JAHLIL" or "PLAINTIFF"), are and was at all times relevant to this Complaint a citizen and resident of the State of New York, citizens of the United States of America, currently residing in Manhattan.

9.  PLAINTIFF KECIA MONK is the mother and or natural guardian of INFANT JAHLIL Q.

10. PLAINTIFF INFANT/JAHLIL was approximately 14 years old when he was wrongfully arrested and detained.

11. PLAINTIFFs LARISSA ROYSTER (hereinafter referred to "PLAINTIFF" or "Royster"), and INFANT TYQUAN H. (hereinafter referred to as "Infant" or "TYQUAN" or "PLAINTIFF"), are and was at all times relevant to this Complaint a citizen and resident of the State of New York, citizens of the United States of America, currently residing in Queens.

12. PLAINTIFF LARISSA ROYSTER is the mother and or natural guardian of TYQUAN H.

13. PLAINTIFF INFANT/TYQUAN H. was approximately 14 years old when he was wrongfully arrested and detained.

14. Defendant City of New York (hereinafter referred to as "NYC" or "Defendant") is a municipality that is a political subdivision of the State of New York, existing pursuant to the Laws of the State of New York.

15. The New York City police department (hereinafter referred to as "NYPD" ) is a police department working for NYC and or as a subdivision and or department and or a branch of NYC.

16. Police Detective John ACONI   -   shield no. 334 - (hereinafter "ACONI") was at all times relevant to this Complaint a duly appointed and acting Detective of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of New York City and the State of New York. He is entitled to indemnification under N.Y. Gen. Mun. Law § 50-k and by contract.

17. The Department JUVENILE JUSTICE (hereinafter referred to as "DJJ") is a department working for NYC and or a subdivision and or department and or a branch of NYC.

18. NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES, (hereinafter referred to as "ACS" ) is a department working for NYC and or a subdivision and or department and or a branch of NYC.

19. John Does #1-10, whose actual names PLAINTIFF has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designations "John Doe" and "Jane Doe," represent those officers, detectives, supervisors other agents and employees of the NYC acting under color of law and in their individual capacities within the scope of employment or agency pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County, New York City and State of New York, who participated in the misconduct described herein. They are entitled to indemnification under N.Y. Gen. Mun. Law §§ 50- j, 50-k and 50-1 and by contract.

## FACTUAL AND PROCEDURAL HISTORY

20. On or about March 1, 2011, infant JAQUANE G. (hereinafter "JAQUANE" or Complainant) approximately 14 year old, reported to the NYC police department that he had been the victim of an Attempted Robbery.

21. On or about March 1, 2011, the New York City Police Department commenced an investigation based on the allegations leveled by JAQUANE.

22. On or about March 1, 2011, DETECTIVE ACONI, Shield No. 334, was assigned to investigate said robbery.   At all times hereinafter mentioned DETECTIVE ACONI, Shield No. 334 was a member of the New York City Police Department, and as such, was an agent, servant and or employee of the City of New York, was acting during the course of his employment with, and for the business uses and purpose of the New York City

Police Department and the City of New York.

23. On or about March 1, 2011, DETECTIVE ACONI interviewed complainant JAQUANE and took a statement from him, including a description of the perpetrators.   Upon information and belief, said complainant JAQUANE reported that the perpetrators were allegedly three (3) male blacks, each between the ages of 16 years and 25 years, as per the DETECTIVE ACONI'S personal notes.

24. On or about March 1, 2011, complainant JAQUANE told DETECTIVE ACONI that at the time of the Attempted Robbery, complainant JAQUANE was approached by three (3) male blacks (hereinafter Perpetrators #1, #2, and #3); Perpetrator #1 stated "Give me your fucking phone."   Perpetrator #1 then punched JAQUANE in the face, knocking him to the ground.   Perpetrator #2 then started to kick JAQUANE in the stomach and back and while JAQUANE was on the ground.   Perpetrator #3 kicked JAQUANE's dog while JAQUANE was on the ground.   At that March 1st interview JAQUANE described the three perpetrators as three male blacks ages 16-25, never told the detective that his head had been slammed into the ground and never told the detective that he knew the persons who had allegedly attacked him.

25. On or about March 2, 2011, DETECTIVE ACONI re-interviewed   complainant JAQUANE at the precinct at which time JAQUANE told the detective for the first time that he knew the three persons described above and knew that they were on facebook. JAQUANE also alleged for the first time on March 2, 2011, that during the incident, Perpetrator #2 slammed his head into the ground.

26. On or about March 2, 2011, DETECTIVE ACONI had JAQUANE log onto Facebook. JAQUANE identified the INFANT/PLAINTIFF herein, JAHLIL, as perpetrator #2 who is alleged to have slammed his head into the ground, identified INFANT/Jared G.  as perpetrator #1 who asked him for his phone and only knew perpetrator#3, who was purported to have kicked his dog,  as "Tuee".   Perpetrator #3 known only as "Tuee" was not identified on facebook, but was later identified to be the INFANT/PLAINTIFF TYQUAN.   This was the first time that complainant JAQUANE identifies one of the alleged perpetrators to be white and another to be hispanic.

27. Although JAQUANE initially told DETECTIVE ACONI that the three perpetrators were male blacks between the ages of 16-25 (JAHLIL is Hispanic, Jared G. is Caucasian and TYQUAN is the only black male identified), on or about March 2, 2011, DETECTIVE ACONI did falsely execute a written complaint, wherein DETECTIVE ACONI did maliciously commence a criminal proceeding against the INFANT/PLAINTIFFS herein, and did falsely charge the INFANT/PLAINTIFFS as set forth below, without probable cause.

28. On or about March 7, 2011, at approximately 7:00pm, DETECTIVE ACONI arrested Jared G (male white 15 y.o. and alleged to be perpetrator#1) and commensurate with Patrol Guide § 215-09 and § 215-12, notified his parent and released him on his own recognizance with a return court date of March 10, 2011.

29. On or about March 8, 2011 at approximately 8:19 am DETECTIVE ACONI falsely

arrested INFANT/PLAINTIFF TYQUAN (15 y.o.male black, alleged to be perpetrator #3), despite having received conflicting information from the complainant on at least two or more occasions.   On or about March 8, 2011, at approximately 3:00 p.m, INFANT/PLAINTIFF JAHLIL (14 y.o. male hispanic, alleged to be perpetrator #2) was falsely arrested, despite DETECTIVE ACONI having received conflicting information from the complainant on at least two or more occasions regarding JAHLIL'S description and participation.

30. DETECTIVE ACONI declined to issue a Family Court Appearance Ticket to INFANT/PLAINTIFF TYQUAN (alleged to be perpetrator #3, the only black male arrested and against whom the least culpable conduct was attributed) as he had done with Jared G. (alleged to be perpetrator #1, the only white male arrested and against whom the most severe criminal conduct is attributed) and declined to release JAHLIL (alleged to be perpetrator #2, the only hispanic male arrested and against whom conflicting criminal conduct is attributed) as he had done with Jared G. the night before.

**VIOLATIONS OF THE FAMILY COURT ACT AND PATROLE GUIDE**

31. On March 8, 2011, at approximately 8:19am,   INFANT/PLAINTIFF TYQUAN was arrested.   On March 8, 2011 at approximately 3:00pm, INFANT/PLAINTIFF JAHLIL was arrested.   The Family Court Act § 305.2, NYC Police Patrol Guide (hereinafter P.G.) Procedure No. 215-09 and NYC Police Patrol Guide (hereinafter P.G.) Procedure No. 215-12, all require that when a juvenile is arrested while Family Court is in session, he/she must be taken forthwith to the nearest Family Court.

32. DETECTIVE ACONI and the DEFENDANTS violated the Family Court Act and the NYC Police Patrol Guide by holding TYQUAN and JAHLIL in the 107 precinct all day on March 8, 2011 until the evening, when TYQUAN and JAHLIL had to be transported to Horizons Juvenile Detention facility to remain overnight until the next day.

33. TYQUAN and JAHLIL were never brought to Family Court (in accordance with F.C.A.§ 305.2, P.G.215-09, and P.G. 215-12) until the next day and the INFANT/PLAINTIFFS did not see a Judge to be arraigned until 4:09pm on March 9, 2011, more than 25 to 32 hours after their initial detention and arrest.

34. DETECTIVE ACONI AND DEFENDANTS violated the NYC Police Patrol Guide in that P.G. 215-09 and P.G. 215-12 provide that when an INFANT/is to be interrogated he/she is to be taken to a facility/room designated and set up for juvenile interrogations forthwith.   Miranda warnings signed by the INFANT/PLAINTIFFS indicate that TYQUAN AND JAHLIL were first interrogated at 7:50pm and 7:00pm respectively (almost 9 and 5 hours respectively after arrest), once again in violation of NYC Police Department Patrol Guide.

35. The INFANT/PLAINTIFFS were then transported to Horizons Juvenile Detention Facility at some point later on that night.

36. The INFANT/PLAINTIFFS were brought before the court for arraignment some 25- 32 hours after arrest THE FOLLOWING DAY.   There was no reasonable excuse for the DEFENDANT to keep the INFANT/PLAINTIFFS at the precinct when the Family Court

was in session at the time of their arrest.    Even adult criminal defendants are required to be arraigned within 24 hours of arrest, but in the case of an arrested Juvenile the rules are much more stringent and require that the INFANT/be seen by a judge as quickly as possible after arrest.

37. Upon being arraigned on March 9, 2011 at 4:09 am the court remanded both TYQUAN AND JAHLIL with an "OPEN" status, a designation which gave the New York City Department of Juvenile Justice (hereinafter "DJJ") discretion to place TYQUAN and JAHLIL in a secure facility (reserved for the more violent or out of control youth) or in a non-secure detention setting (reserved for the less violent more compliant residents).    At that time, this court routinely placed youth that were remanded on an "OPEN" status no matter what their background, reasoning that DJJ should have the discretion to assess and move youth as the facility, staff and residents dictated.    DJJ routinely started these residents off in secure detention and used their risk assessment instrument in order to assess which residents with an "OPEN" status should be moved to non-secure detention and which would remain in secure.

38. From on or about March 9, 2011 until the INFANT/PLAINTIFF'S release on May 11, 2011, DEFENDANTs violated DJJ's risk assessment protocol and internal rules, regulations and procedures for transferring residents from secure detention to non-secure detention, by failing to exercise the discretion given them by the court on March 9th to transfer the INFANT/PLAINTIFFS out of secure detention if their behavior dictated.

39. From on or about March 9, 2011 until May 23, 2011   TYQUAN and JAHLIL were both

held by DJJ in secure detention with the more violent residents, notwithstanding that all

of the adjustment reports generated by DJJ indicated that TYQUAN and JAHLIL were

abiding by all the facility rules, had exhibited exemplary behavior, had won awards and

had progressed to the highest behavioral level while in detention.    DEFENDANTs

violated their own risk assessment protocol and internal rules, regulations and procedures

in failing to transfer the INFANT/PLAINTIFFS to non-secure detention, and thereby

exposed   the INFANT/PLAINTIFFS to more violent inmates/residents who threatened

and assaulted the INFANT/PLAINTIFFS on a regular and consistent basis.

40. From on or about March 9, 2011 to May 13, 2011, DEFENDANTS failed to protect

TYQUAN and JAHLIL while they were in secure detention in that the

INFANT/PLAINTIFFS were regularly threatened and beaten up by residents within the

secure facility.   This information had been reported to the DEFENDANTS as early as

March 9, 2011 and continued to be reported to the DEFENDANTS for the entire duration

of   the INFANT/PLAINTIFFS remand, but the DEFENDANTS refused to exercise the

discretion to move the INFANTS and protect the INFANTS from the ongoing threats.

41. In fact, INFANT/PLAINTIFF TYQUAN was jumped and beaten up on his birthday on

April 23, 2011.

### AS TO DETECTIVE ACONI's Conduct and the Family Court Proceedings

42. Upon information and belief, DETECTIVE ACONI opened his investigation of the

above matter on March 1, 2011 and closed out his investigation on March 8, 2011

without questioning any other witnesses, without investigating any of the inconsistencies

in JAQUANE's statements, without visiting the scene nor investigating the videotape evidence, and arrested TYQUAN and JAHLIL with non credible allegations and with no probable cause.

43. Upon information and belief, DETECTIVE ACONI failed to follow department procedure as outlined by the comment section of the DD5 and failed to "interview the witness", failed to canvass for "additional witness", failed to "canvass for the video equipment/cameras", failed to "canvass for sources of electronic information" and merely interviewed the complainant/victim, notwithstanding the conflicting information provided by the complainant/victim and being informed that there was videotape evidence of the occurrence.   Such further investigation would have revealed that TYQUAN and JAHLIL were not involved in said occurrence, and the only perpetrator that asked for money, hit or kicked the complainant and ultimately kicked the complainant's dog was the white perpetrator#1, Jared G.

44. Upon information and belief, it was reported to DETECTIVE ACONI by both of the INFANT/PLAINTIFFs and PLAINTIFFs that there were numerous witnesses to the alleged attempted robbery who resided in the building where the incident occurred.

45. Upon information and belief, it was reported to DETECTIVE ACONI by both of the INFANT/PLAINTIFFs and PLAINTIFFs that there were video cameras mounted on the building where the incident occurred and there were individuals who had videotaped the alleged robbery, who lived either in the building where the incident occurred or in the surrounding buildings.   This information was later reported to the prosecutor, Assistant

Corporation Counsel Latoya Jeffers in the instant case.

46. Upon information and belief, DETECTIVE ACONI knew or should have known that there were video cameras mounted on the building where the incident occurred and failed to investigate same.

47. Notwithstanding this information or the inconsistencies in the complainant JAQUANE's statements to the DETECTIVE ACONI, the detective, by his own admission, did not interview any possible witnesses, did not look for any other possible witnesses, never visited the scene where this incident was alleged to have occurred, never investigated the alleged injuries of JAQUANE, and never attempted to obtain or view the video of the alleged incident before closing his case file on March 8, 2011.

48. INFANT/PLAINTIFF TYQUAN was arraigned on March 9, 2011, along with INFANT/PLAINTIFF JAHLIL and charged with Attempted Robbery in the Second Degree, P.L. §110/160.10(1), Attempted Assault in the Second Degree, P.L. §110/120.05(2), and Attempted Grand Larceny in the Fourth Degree, P.L. 110/155.30(5). Both were remanded to DJJ with an "OPEN" status, but remained in secure detention throughout, until their release on May 11, 2011.   Upon information and belief, DETECTIVE ACONI treated the INFANT/PLAINTIFFs herein differently from the INFANT/Jared G., and or otherwise applied the laws unfairly and/or unconstitutionally, and or otherwise failed to follow the laws, rules, guidelines and regulations with respect to the INFANT/PLAINTIFFs.    Upon information and belief, the aforesaid disparate treatment of the INFANT/PLAINTIFFs herein was NOT founded on any legal,

reasonable and or rational basis.

49. After their arrest on March 8, 2011, the instant matter was then scheduled for a probable

cause hearing on March 14, 2011.   On March 14, 2011, the complainant/victim ,

JAQUANE, testified at the probable cause hearing.   The complainant testified that

respondent Jared G. punched him, JAHLIL slammed his head into the ground and

TYQUAN kicked his dog.   At the end of the probable cause hearing, the Court found

that the Presentment Agency established probable cause with respect to all charges in the

petition.   The Matter was adjourned until March 21, 2011 for trial.

50. On March 21, 2011, JAQUANE testified on direct and cross examination and completed

his testimony.   The trial next continued on March 23, 2011.   On March 23, 2011, the

trial of the instant matter was delayed without taking more testimony, because defendants

failed to provide police paperwork and other discovery to trial counsel prior to the

testimony of the complainant/victim, notwithstanding that these documents were in the

possession of the New York City Police Department.

51. On March 30, 2011, the complainant/victim had to be recalled to the stand and his

testimony reopened in order to address the late discovery provided to trial counsel for the

INFANT/PLAINTIFFs.   The complainant's testimony was completed on this day with

less than 50 minutes of testimony.   The case was then scheduled to continue with the

testimony of DETECTIVE ACONI on April 6, 2011.

52. Prior to adjourning the trial to continue on April 6, 2011, trial counsel for

INFANT/PLAINTIFF JAHLIL requested a parole or in the alternative, a modification of the remand order from "OPEN" to non-secure detention (hereinafter NSD).   The attorney for the INFANT/PLAINTIFF TYQUAN joined in that request and informed the court that TYQUAN had not been moved out of secure detention by DJJ, notwithstanding that he was on the "Honor Roll", was "Student of the Week" and was on the highest level of the behavior modification system.   The Court declined to modify the remand order, but rather elected to leave the INFANT/PLAINTIFFs' remand designation in the hands of DJJ and further stated that she would not modify the order in the middle of the trial.   The court adjourned the trial of the INFANT/matter to the morning of April 6, 2011 and stated on the record that if all parties were present at 9:30, the case would be called into the court room and if all parties were present then, "maybe we can finish the case" (Not annexed - See March 30, 2011 Trial Transcript, page 16, lines 18-25, and page 17, lines 1-4, 20-24.)

53. Notwithstanding the foregoing, the trial of the instant matter could not begin at 9:30 on April 6th or at any time that morning or afternoon, since the defendant's witness never appeared until late in the afternoon of April 6, 2011.

54. On April 6, 2011, despite waiting all morning for the instant matter to be called and despite all counsel, INFANT/PLAINTIFFs and PLAINTIFFs being present and available to proceed and conclude the proceedings, the trial of the instant matter could not proceed and was delayed once again by the DEFENDANTs, when DETECTIVE ACONI failed to arrive at 9:30 or at any time thereafter until late in the afternoon on April 6th 2011.

55. On April 6, 2011, DETECTIVE ACONI failed to arrive, despite being notified "MUST
APPEAR FOR TRIAL" for 9:00am on April 6, 2011, in direct violation of the NYC
Police Patrol Guide, which provides that when notified as such, the member of the
service (hereinafter MOS) must report to court by 9:00am.   The failure of DETECTIVE
ACONI to appear when notified by his command, in direct violation of the Patrol Guide,
resulted in the defendants' failure to be ready to proceed to trial when scheduled, and in
turn, caused TYQUAN and JAHLIL to have to remain incarcerated unnecessarily
pending the completion of the trial in the instant matter, which could have concluded on
April 6th.

56. The trial of the instant matter could not continue on April 6th, due to **DETECTIVE
ACONI's failure to appear** when directed to do so.   The instant trial was delayed for 6
days until April 12, 2011, when said trial could only be scheduled to be heard for 30
minutes from 9:30 until 10 am only,   and then could not be scheduled again until May 3,
2011.

57. Ultimately, DETECTIVE ACONI's ignorance of the "MUST APPEAR" notification and
his failure to appear until late in the day on April 6, 2011, resulted in a delay of trial of 37
days, during which time only 30 minutes of testimony could take place and during which
time, the INFANT/PLAINTIFFS remained incarcerated in secure detention and the
PLAINTIFFS missed additional days of work and pay.

58. While in detention, TYQUAN and JAHLIL were never moved from secure detention
even though their behavior while in detention was exemplary.   TYQUAN and JAHLIL

were jumped and beaten on a number of occasions by other residents in the secure

facility and received injuries that were never properly treated.   Specifically, TYQUAN

received an injury to his hand that resulted in his range of motion being restricted;

JAHLIL suffered from hemorrhoids that were not properly treated.

59. Since the inception of the   instant arrests and case, the families informed DETECTIVE

ACONI of the existence of videotape evidence which imaged the incident and which

they believe would have exonerated the INFANT/PLAINTIFFs.   Since the inception of

the instant arrests and case, the families had spoken with residents who lived at the scene

of the occurrence, who saw what occurred and who they believe would have exonerated

the INFANT/PLAINTIFFs.   The families provided this information to DEFENDANT,

including the NYC Police Department and the Office of the Corporation Counsel.   The

DEFENDANTs never explored the information provided, never visited the crime scene,

never sought to interview any other witnesses or investigate the existence of a videotape.

The only time that the DEFENDANTs agreed to interview any other witnesses regarding

the instant occurrence was when the PLAINTIFFs were able to convince one of such

witnesses to attend court and were able to convince another to send them a copy of the

videotape evidence.

60. The aforesaid videotape clearly showed that both infants had NOTHING to do with the

attack on JAQUANE.

61. As a result of the videotape, on or about May 11, 2011, both infants were released from

detention.

62. On or about May 28, 2011, the charges against both infants were dismissed in its entirety.


### AS TO INFANTS' ILLEGAL INCARCERATION

63. Both INFANT/PLAINTIFFs spent approximately 65 days each in secure detention
    isolated from their families and friends and deprived of their freedom and liberty and
    educational opportunity.   Both INFANTs were beaten by the residents of the secure
    detention facility.


64. During arrest and subsequent detention, INFANT/PLAINTIFFs were visibly frightened and
    crying.


65. DEFENDANTs interrogated both INFANT/PLAINTIFFs who truthfully maintained their
    Innocence.


66. DEFENDANTs failed to investigate the inconsistent and conflicting stories of the
    complainant/victim, failed to the investigate the inconsistent and conflicting description of
    the perpetrators as provided by the complainant/victim, failed to investigate the reported
    existence of witnesses; failed to investigate the videotape evidence, and the Infants' claims
    of innocence,   relied on the glaringly non-credible allegations of the complainant/victim
    and therefore, did not have probable cause to arrest the said INFANT/PLAINTIFFs.


67. During the approximate 65 days the infants were detained, the DEFENDANTs failed to

protect the INFANT/PLAINTIFFs and failed to exercise their discretion and transfer the INFANT/PLAINTIFFs from secure detention, where the most violent residents were held, to non-secure detention, despite the INFANT/PLAINTIFFs exemplary behavior, having achieved the highest behavioral level within the facility and despite INFANT/PLAINTIFFs being threatened and beaten by other residents within the secure facility.

68. During the 65 days that the INFANT/PLANTIFFs were detained, the INFANTs suffered the loss of their primary caregiver and the loss of the close and loving relationship and security that they had with their mothers / guardians and siblings. The INFANTs also experienced the mortification and shame of having their families see them go through the arrest and arraignment process, thrown in a detention facility, and their personal relationships suffered.

69. The INFANTs suffered a lapse of educational instruction and opportunities for 65 days and consequently, their schooling suffered in that they had to repeat coursework and were never able to catch-up to their peers and classmates who were able to remain in school continuously through the end of the school year.

70. During the 65 days the INFANTs were detained, the parents of the Infants suffered the loss of their close and loving relationship they had with their Infants. The PLAINTIFFs also experienced the mortification and shame of having their Infants go through the arrest and arraignment process, thrown in a detention facility, and their personal relationships suffered.

## **DAMAGES**

71. The actions of all the individuals, acting within the scope of their employment with the City of New York, deprived PLAINTIFFs of their rights under the First, Fourth and Fourteenth Amendments of the United States Constitution and the laws of New York.

72. As a direct and foreseeable result of defendants' misconduct, INFANT/PLAINTIFFs were incarcerated for more than 80 days, for crimes that did not happen and which arrests and incarceration were based on non credible allegations, without a proper investigation, without probable cause, and where a reasonable person acting in his capacity as a NYC police detective in compliance with the NYC Police Department rules and regulations and patrol guide, would have investigated further.   Such investigation would have revealed that INFANT/PLAINTIFFs were completely innocent.   The lack of such investigation resulted in the INFANT/PLAINTIFFs being wrenched from their lives as they knew it, and from family and friends.

73. As a direct and foreseeable result of defendants' misconduct, INFANT/PLAINTIFFs were incarcerated for more than 80 days in a secure facility with the most dangerous and violent juvenile delinquents arrested throughout New York City, while the defendants failed to exercise the discretion given to them by the Court to move the INFANT/PLAINTIFFs to a non-secure facility to await trial while living amongst residents who were less dangerous and non-violent.   The defendants failed to exercise the discretion to move the INFANT/PLAINTIFFs to a non-secure, safer location, notwithstanding the INFANT/PLAINTIFF's exemplary behavior and reports that the INFANT/PLAINTIFFs were being targeted by other violent residents within the secure facility.

74. As a direct and foreseeable result of defendant's misconduct, INFANT/PLAINTIFF JAHLIL suffered hemorrhoids, which remained untreated, despite complaints to the facility.

75. As a direct and foreseeable result of defendant's misconduct, INFANT/PLAINTIFF TYQUAN suffered an injury to his right knuckle when he was jumped by three residents in the secure facility, which knuckle remains deformed to the present day and which deformity restricts his movement.

76. As a direct and foreseeable result of defendant's misconduct, both Infants suffered multiple injuries having been assaulted numerous times in the secure detention facility.

77. The negligent, unlawful, intentional, willful, deliberately indifferent, reckless and/or bad faith acts and omissions of defendant and or its employees, agents or otherwise   caused INFANT/PLAINTIFFs the following damages, which continue to date and will continue into the future: personal injuries; pain and suffering; loss of liberty; severe mental and emotional injury and anguish; loss of family relationships, severe psychological damage; infliction of physical injury and physical sickness, including but not limited to extreme stress; humiliation, indignities and embarrassment; degradation; fear; loss of standing in the community; permanent loss of natural psychological, educational and social development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunities, vocational opportunities, personal fulfillment, family relationships, reading, television, movies, travel, enjoyment and expression, for which she is entitled to monetary relief.

78. Those same actions and omissions by defendant, its employees and or agents caused all PLAINTIFFs to experience a loss of relationship with family at a crucial and tender age, including the financial and other support, nurture, love, guidance, and training that the mothers and guardians would have provided the Infants with during that time; loss of educational opportunity; severe psychological damage; infliction of physical injury and physical sickness, including but not limited to extreme stress; humiliation, indignities and embarrassment; degradation; fear; loss of standing in the community; and permanent loss of natural psychological and social development.

79. The non-negligent acts and omissions committed by the defendant, its employees and or agents described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages, except as to the claims against the City of New York.

80. The City of New York was negligent in the hiring, training, supervising and retaining DETECTIVE ACONI and other police officers, all employees, and or all agents assigned to the investigation, and assigned to the care and custody of the said INFANT/PLAINTIFF's during their deprivation of their freedom.   As a result, the INFANT/PLAINTIFFs were falsely arrested, falsely imprisoned, and sustained personal injures.

## FEDERAL CLAIMS

### COUNT 1

42. 42    .S.C. § 1983 Fourth Amendment Claim

81. PLAINTIFFs hereby incorporate by reference all of the foregoing paragraphs 1 through 80 and further allege as follows:

82. Defendant NYC, ITS EMPLOYEES AND OR AGENTS , including   but not limited to, DETECTIVE ACONI, other Doe officers and supervisors, failed to adequately investigate the Crimes as alleged by JAQUANE, thereby violating both INFANT/PLAINTIFFs' clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution, the New York State Constitution, and the Laws of the State of New York to be free of unreasonable searches and seizures, false arrest and malicious prosecution.

83. Defendant NYC, ITS EMPLOYEES AND OR AGENTS , initiated and continued the malicious prosecution against both Infants without PROBABLE CAUSE, without further investigating the claims made by JAQUANE and INFANT/PLAINTIFFs and PLAINTIFFs' Families, in violation of Infants' clearly established constitutional rights resulting in INFANT/PLAINTIFFs' continued unlawful incarceration, and denying the INFANT/PLAINTIFFs their liberties and freedoms.

84. Additionally, Defendant NYC, ITS EMPLOYEES AND OR AGENTS , acting individually and in concert, ignored the facts in front of them and failed to investigate Infants' readily verifiable claims of innocence, relied on non credible allegations, had no probable cause to

arrest INFANT/PLAINTIFFs, hereby depriving them of their clearly established constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution, the New York State Constitution, and the Laws of the State of New York, including but not limited to their rights not to be subject to unreasonable seizure.

85. Defendant NYC, ITS EMPLOYEES AND OR AGENTS , further refused to make even a rudimentary investigation of the non credible allegations, and or of each INFANT/PLAINTIFF's readily verifiable claim of innocence.

86. The Defendant NYC, ITS EMPLOYEES AND OR AGENTS , performed the above-described acts under color of state law, deliberately, intentionally, with malice or reckless disregard for the truth, negligently; in violation of their obvious and basic duties to protect Infants; and with deliberate indifference to Infants' clearly established constitutional rights.

87. As a direct and proximate result of defendants' conduct, Infants were wrongly, negligently and maliciously prosecuted without probable cause, denied bail and suffered a prolonged detention during the more than 80 days in detention, as well as the other grievous and continuing damages and injuries set forth above.

## COUNT II

42  .S.C. § 1983 Fourteenth Amendment Claim

88. PLAINTIFFs hereby incorporate by reference all of the foregoing paragraphs 1 through 87 and further allege as follows:

89. The Defendant NYC, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers and their conduct under color of state law, and supervisors had opportunities to intercede on behalf of PLAINTIFFs, to prevent INFANTs' false arrest, malicious prosecution, false imprisonment, and deprivation of liberty without due process of law, without probable cause, and to prevent PLAINTIFFs from being separated, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

90. The Defendant NYC, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers' failures to intercede violated PLAINTIFFs clearly established constitutional rights, including but not limited to not to be deprived of liberty without due process of law as guaranteed by the Fourteenth Amendment.

91. Defendant NYC, ITS EMPLOYEES AND OR AGENTS , committed these acts under color of state law, intentionally, with reckless disregard for the truth, without probable cause,   and with deliberate indifference to PLAINTIFFs' clearly established constitutional rights.

92. As a direct and proximate result of Defendant NYC's, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers' actions, INFANTs were wrongly prosecuted, denied reasonable bail, jailed for more than 80 days and

suffered the other grievous and continuing damages and injuries set forth above.

## COUNT III

### <u>42 U.S.C. § 1983 First and Fourteenth Amendment Claim for Interference with Family Relationships</u>

93. PLAINTIFFs hereby incorporate by reference all of the foregoing paragraphs 1 through 92 and further allege as follows:

94. During the time that Infants were detained, Infants suffered the loss of their primary caregiver and of the close and loving relationship they had with the mothers and or guardians, as well as experiencing the mortification of being seen through the arraignment process and thrown in detention.

95. At the same time PLAINTIFFs suffered separation from their infants and the terrible knowledge that their infants were experiencing the harms as aforesaid.

96. Defendant NYC, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers and supervisors acting individually and in concert, by their conduct, with no probable cause,  refusing to investigate readily verifiable claims of innocence, as previously described, deprived PLAINTIFFs' of their clearly established constitutional rights under the First and Fourteenth Amendment of the United States

Constitution, the New York State Constitution, and the Laws of the State of New York including but not limited to the rights to family association; for a parent to live with their child, and to participate in their Infant's education, nurturing and development; and to protect and care for their Infants, and Infants' right to the love, care, guidance, support and nurturing of their parent and or guardians.

97. Defendant NYC, ITS EMPLOYEES AND OR AGENTS , ACONI and Doe officers committed these acts under color of state law, intentionally, with reckless disregard and/or deliberate indifference to Infants' innocence, PLAINTIFFs' close relationship and clearly established constitutional rights, and with full knowledge that their actions would interfere with the relationship between PLAINTIFFs.

98. As a direct and proximate result of NYC, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers actions INFANT/PLAINTIFFs were wrongly prosecuted, falsely arrested with no probable cause,   denied reasonable bail, and jailed for more than 80 days, during which time they were removed from their home and parents life and during which time Infants' education and other rearing and nurturing suffered because of PLAINTIFFs' absence, as well as the other grievous and continuing damages and injuries set forth above.

## COUNT IV
### STATE LAW CLAIMS
False Arrest and Malicious Prosecution

99. PLAINTIFFs hereby incorporate by reference all of the foregoing paragraphs 1 through 98 and further allege as follows:

100.    Defendant NYC, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers and supervisors, with malice and or negligence, acting individually and or in concert caused INFANT/PLAINTIFFs to be unlawfully arrested, charged, and prosecuted for those and other crimes in New York City, in violation of the laws of the State of New York.

101.    Defendant NYC, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers and supervisors with malice and or negligence, caused Infants to be arrested, charged, prosecuted and jailed without in violation of the Patrol Guide., and the Family Court Act., without probable cause for those and other crimes in New York City, in violation of the laws of New York.

102.    Defendant NYC, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers engaged in these acts within the scope of their employment and are entitled to indemnification pursuant to Gen. Mun. Law §§ 50-j, 50-k and 50-1 and by contract.

103.    As a direct and proximate result of Defendant's conduct, INFANT/PLAINTIFFs were maliciously and or negligently prosecuted with false

instruments, without probable cause,   and jailed for more than 80 days, and

suffered the other grievous and continuing damages and injuries set forth above.


### COUNT V

Intentional, Reckless or Negligent Infliction of Emotional Distress


104.      PLAINTIFFs hereby incorporate by reference all of the foregoing

paragraphs 1 though 103 and further allege as follows:


105.      The improper, deliberate and traumatizing conduct of Defendant NYC, ITS

EMPLOYEES AND OR AGENTS , ACONI and Doe officers in failing to

investigate, refusing to investigate readily verifiable claims of innocence, in failing

to recognize non credible allegations, without probable cause, resulting in Infants'

wrongful arrest and prosecution, unlawful incarceration, and concomitant severe

emotional distress, was extreme and outrageous.   It directly and proximately

caused PLAINTIFFs to suffer the grievous and continuing injuries and damages set

forth above.


106.      In the alternative, Defendant NYC, ITS EMPLOYEES AND OR

AGENTS negligently and grossly negligently, and in breach of their duties

owed to Infants and PLAINTIFFs to, *inter alia,* report accurately the information

given to them; failed to investigate non credible allegations, used false instruments

to prosecute INFANT/PLAINTIFFs, without probable cause, failed to report

accurately the information taken from other witnesses and their investigative

responses to such information; and investigate readily verifiable claims of

innocence, and otherwise acting to deny Infants due process of law, directly and

proximately caused Infants to be falsely arrested, maliciously prosecuted, and

wrongly jailed for more than 80 days.   Defendants' actions unreasonably

endangered Infants physical health and safety, and caused Infants to suffer

physical harm, including physical ailments resulting from the circumstances

and duration of Infants wrongful jailing, and to fear for Infants physical safety

throughout the period of their detention. Defendants further inflicted emotional

distress on PLAINTIFFs by unlawfully depriving them of the relationship, with all

the previously identified injuries attendant thereto.

107.      Defendants NYC, (ITS EMPLOYEES AND OR AGENTS ), ACONI and

Doe officers engaged in these acts within the scope of their employment.


## COUNT VI

### Negligence

108.      PLAINTIFFs hereby incorporate by reference all of the foregoing

paragraphs 1 through 107 and further allege as follows:


109.      Defendant NYC, ITS EMPLOYEES AND OR AGENTS, ACONI and Doe

officers are liable for negligence, having breached their duty of reasonable care

to Infants.

Specifically, without limitation and by way of example, defendants:

a.    a.  despite their notice and knowledge, as outlined above, failed to investigate Infants' innocence;

b.    b.  despite their notice and knowledge, failed to adequately protect PLAINTIFF's from physical and emotional injury despite having a reasonable opportunity to do so;

c.    c.  despite their notice and knowledge, failed to protect PLAINTIFF's constitutional rights.

d.    d.  despite their notice and knowledge, as outlined above, failed to secure probable cause before arresting the INFANT/PLAINTIFFs.

e.    e.  despite their notice and knowledge, as outlined above, failed to investigate non credible allegations.

110.    Defendants' (ITS EMPLOYEES AND OR AGENTS ) negligence and gross negligence directly and proximately caused Infants, to be falsely arrested, maliciously prosecuted, and wrongly jailed for more than 80 days, as well as the other damages previously described.

111.    Defendant (ITS EMPLOYEES AND OR AGENTS ) engaged in these acts within the scope of their employment.

## COUNT VII

*Respondeat Superior* Claim against City of New York

112.    PLAINTIFFs hereby incorporate by reference all of the foregoing paragraphs 1 through111 and further allege as follows:

113.    At all times relevant to this Complaint, the Defendant NYC, ITS EMPLOYEES AND OR AGENTS , DETECTIVE ACONI and Doe officers acted as agents of the City of New York, the New York Police Department, in furtherance of the business, including law enforcement functions, of those entities, and within the scope of their employment or agency with those entities.

114.    The conduct by which the Defendant (ITS EMPLOYEES AND OR AGENTS) committed the torts of malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence was not undertaken for the individual Defendants personal motives, but rather was/ were undertaken while the Defendant NYC, ITS EMPLOYEES AND OR AGENTS were on duty, carrying out their routine investigative functions as detectives, police officers, and criminal prosecutors, care givers, custodians and engaging in such conduct as would have been reasonably expected by their employers.   Indeed, the conduct of the Defendant NYC, ITS EMPLOYEES AND OR AGENTS in committing the above-described torts was reasonably foreseeable by the City of New York.

115.    Under the doctrine of *respondeat superior,* the City of New York are liable for their agents' state law torts of malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence.

WHEREFORE, PLAINTIFFs KECIA MONK as Mother and Natural Guardian of JAHLIL Q., a Minor, and KECIA MONK, INDIVIDUALLY, LARISSA ROYSTER as Legal Guardian of TYQUAN H., a Minor, and LARISSA ROYSTER pray as follows:

A.   That the Court award compensatory damages to PLAINTIFFs and against the Defendant in an amount to be determined at trial;

B.   That the Court award punitive damages to PLAINTIFFs, and against Defendant in an amount to be determined at trial, that will deter such conduct by defendant in the future;

C.   For a trial by jury;

D.   For pre judgment and post judgment interest and recovery of PLAINTIFFs' costs, including, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims, all costs available under 28 U.S.C. § 1920, and all other costs, including attorneys fees, available under applicable laws; and

E.   For any and all other relief to which PLAINTIFFs may be entitled to.

GALARZA LAW OFFICE, P.C.
J. Ceasar Galarza (JG1557)
5020 Sunrise Highway, 2ⁿᵈ Floor
Massapequa Park, NY 11762
Tel:  516-797-1600
Fax: 516-7995-2619
jgalarza@aol.com
*Attorneys for PLAINTIFFs*

AFFIRMATION OF SERVICE   J. Ceasar Galarza, duly admitted to practice law before the Courts of the Sate of New York and Federal Court affirms the following:  I am the attorney for the plaintiff in this action.  That on the 7ᵗʰ day of June, 2013,  I served a copy of this Amended Complaint via email (lsohn@law.nyc.gov), Liza Sohn, Esq., The City of New York, LAW DEPARTMENT, 100 Church Street, New York, NY 10007-2341

J. Ceasar Galarza 6/07/2013